Harrison MULLINS, Appellant,

v.

SUPERIOR FURNITURE & MANUFACTURING COMPANY, Inc., et al.,
Appellees.

SUPERIOR FURNITURE & MANUFACTURING COMPANY, Inc., et al.,
Cross-Appellants,

v.

Harrison MULLINS, Cross-Appellee.

Court of Appeals of Kentucky.

March 3, 1972.

Bernard J. Blau, of Kaufman, Jolly, Johnson & Blau, Newport, for appellant and cross-appellee Harrison Mullins.

Frank A. Wichmann, Covington, for appellees and cross-appellants Superior Furniture & Manufacturing Co. and Aetna Life & Casualty Co.

Thomas R. Emerson, Department of Labor, Frankfort, Gemma M. Harding, Department of Labor, Louisville, for appellee John W. Young (Special Fund).

J. Keller Whitaker, Director, Workmen's Compensation Board, Department of Labor, Frankfort, for appellee Workmen's Compensation Board.

GARDNER, Commissioner.

Harrison Mullins filed a claim with the Workmen's Compensation Board whereby he sought benefits for a back injury which he sustained. while working for Superior Furniture & Manufacturing Company, Inc. The Board determined he was permanently partially disabled to the extent of 50 percent to his body as a whole. The Special Fund was made a party and later dismissed when the Board decided that no part of claimant's disability was due to the arousal of a pre-existing nondisabling disease. Both Mullins and Superior Furniture appealed to the circuit court where the Board's opinion and award was affirmed. Both have prosecuted appeals, which have been consolidated, to this court. We affirm.

We quickly agree with the Special Fund that it properly was dismissed as a party to the action. None of the parties to the appeal has attempted to place any responsibility on Special Fund.

■ We find no merit in Mullins' contention that the appeal of Superior Furniture should be dismissed because in its petition for review in the circuit court it did not set forth the grounds included in KRS 342.285. While the grounds were not stated verbatim as the statute, the allegations clearly set forth the alleged errors hereinafter discussed.

Mullins contends he should have been awarded benefits based on total permanent disability. Superior Furniture contends that Mullins should have been allowed nothing. Mullins develops his thesis by saying that he had gained only an eighth-grade education, his lifetime occupation had consisted of manual labor, at the time of the accident he was lifting tables weighing approximately 110 pounds, and subsequent to the injury he had been unable to perform manual jobs.

Subsequent to his injury Mullins was examined by Dr. Otto H. Salsbery, an orthopedic surgeon, who stated he could find nothing to substantiate Mullins' complaint that he could not perform manual labor. His thought was that Mullins was "trying to impress me, enough to make me feel it was real." It is noted that Dr. Salsbery's deposition was taken before Dr. Leonard Stark diagnosed the condition as a herniated disc and performed a laminectomy. Prior to the operation Dr. Stark stated that Mullins "is totally disabled for work at this time and could only perform in the very light type of jobs if such were available to him." It is not shown why Dr. Stark's deposition was not taken after the operation. The only doctor who testified subsequent to the operation was Dr. Kenton D. Leatherman. Excerpts from his deposition are as follows:

"Q. Doctor, do you feel that this condition will be a permanent condition?

A. Yes. I think that he will have permanent trouble with his back.

Q. Are you able to place a percentage of disability to the body as a whole? In your record you don't do that.

A. Well, I think that I could only state this, that he is at the present time totally disabled from doing any manual labor or heavy work, which I stated, and I think that on a functional basis for normal living activities around home and light duties, I would consider him to have about 50 percent functional limitation."

\* \* \* \* \* \*

"Q. Would in your opinion Mr. Mullins be able to engage in any kind of occupation at all?

A. Well, I think he might be able to do some type of light work that would not require lifting or standing for long periods of time, bending, twisting, or any actual manual labor. I think he may have some restrictions in the fact that he couldn't do even light lifting on a repetitive basis or any such activity that would produce a constant strain to the low back area.

Q. In your opinion, could he engage in sedentary occupations?

A. Well, I think he would certainly have a better chance of continuing work in this type of activity than he would for any heavier type.

Q. So that in your opinion, he is not totally disabled from working at all, is that correct, but he is simply limited to the type of occupation in which he can engage.

A. Well, generally speaking, yes."

Mullins argues that the only doctor spelling out the percentage of disability was Dr. Leatherman who said he was 50 percent disabled and the disability was permanent. Mullins takes it up from there to say the Board erred in not translating this into 100 percent occupational disability. He cites Department of Economic Security v. Adams, Ky., 450 S.W.2d 819 (1970), wherein it is said "in an occupation requiring strenuous physical labor a half man is no man." There was some evidence that

Mullins previously had worked at jobs not requiring hard physical exertion. He admitted he was a machine operator for 12 years with Triangle Bag Company, which job did not require much lifting. He worked at odd jobs for Superior Furniture after the injury, some of which did not cause serious discomfort. It was Dr. Salsbery's opinion that Mullins was not physically impaired from performing his usual work duties. Dr. Stark testified, prior to the operation, that he believed Mullins' occupational opportunities were restricted to only sedentary types of work.

We are of the opinion that the evidence in support of the claim was not so strong as to require the Board to find that Mullins was more than 50 percent disabled from performing work for which he was qualified.

Superior Furniture uses the same facts to try to persuade this court that Mullins was able to perform some work and that the burden was on him to prove his percentage of disability as outlined in Osborne v. Johnson, Ky., 432 S.W.2d 800 (1968). To substantiate its contention Superior Furniture quotes from Osborne v. Johnson, where it is said:

"If the board finds that the workman is so physically impaired that he is not capable of performing any kind of work of regular employment, or if the board finds that regular employment in the kind of work the man can perform is not available on the local labor market, the man will be considered to be *totally* disabled. Otherwise he will be considered to be only *partially* disabled. And the *percentage* of his partial disability will be determined by the ratio of the prevailing wage rates in the kind of employment available to him, to the wage rates earnable by him before being injured."

That opinion holds that where there is a permanent injury of substantial proportions the Board should consider the age and future employment opportunities of the claimant in the general labor market in de-

termining the percentage of disability of the plaintiff.

 Superior Furniture insists that it was incumbent upon Mullins to present evidence to the Board from which it could base a determination as to Mullins' future employment opportunities. We agree. See Princess Manufacturing Company v. Jarrell, Ky., 465 S.W.2d 45 (1971). The record discloses that Mullins, although he did not introduce a formal survey of employment conditions, met the responsibility. We can but assume that the Board considered all facts in arriving at its decision. It would be helpful to the court on review if in the future the Board would make specific findings concerning the effect on the claimant's future in the labor market in cases where such determination is indicated.

The judgment is affirmed.

All concur.